CASE 114—ACTION FOR A MANDAMUS—MAY 22.

# Whitney, Clerk v. Ky. Midland Ry Co.

### APPEAL FROM MONTGOMERY CIRCUIT COURT.

**JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.**

COUNTIES—LIMITATION OF INDEBTEDNESS—SUBSCRIPTION IN AID OF RAILROAD—REPEAL OF STATUTE BY CONSTITUTION.

Held:  1. Under Constitution, sections 157, 158, limiting the indebtedness of counties, a subscription by a county in aid of a railroad even if it would otherwise be valid, is unauthorized, where it would create an indebtedness in excess of the limit prescribed.

2. Under Constitution, section 179, providing that "the general assembly shall not authorize any county to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association or individual, except for the purpose of constructing bridges, turnpike roads or gravel roads," a vote taken in a county after the Constitution was adopted, favoring a subscription by the county in aid of a railroad, did not authorize the county to make such a subscription, though the vote and subscription were provided for by a law passed prior to the adoption of the Constitution; it being provided by section 1 of the schedule of the Constitution that "the provisions of all laws which are inconsistent with this Constitution shall cease upon its adoption."

J. S. HURT AND J. S. HAZELRIGG, FOR APPELLANTS.

    (No briefs in the record.)

OPINION OF THE COURT BY JUDGE GUFFY—REVERSING.

Prior to September, 1871, the appellee had been authorized to submit to the county judge and justices of Montgomery county a proposition, to be submitted to the voters of Montgomery county, to subscribe for $100,000 of stock in the railroad company upon certain terms and conditions therein specified, and, upon the petition of the proper number of parties the county court of said county, on the

22d day of September, 1891, ordered the question of the subscription for $100,000 on behalf of Montgomery county to appellee's capital stock to be submitted to the qualified voters of Montgomery county, at its various precincts, on the 12th day of October, 1891. The election was held as directed by said order, and resulted in a majority of 689 votes in favor of said subscription, and on the 14th day of October, 1891, the county judge ordered said election proceedings, and the result thereof, to be entered upon the order book of the county court, and that the subscription of said 1,000 shares or $100,000 of the capital stock of said company, be made; and the county court clerk was ordered and directed to make said subscription for and on behalf of the county of Montgomery, and to enter same in the county subscription book of said railway company, upon the terms specified in said proposition and order of September 22, 1891. The clerk refused to make said subscription, believing that he had no right or authority to do so under the then Constitution and laws of this State. The appellee afterwards applied to the circuit court for a mandamus compelling the clerk to make said subscription. Appellant filed a demurrer to the petition of appellee, which was overruled, and a judgment entered requiring the clerk to make said subscription. From that judgment this appeal is prosecuted.

It is suggested for appellant that the petition failed to show that the president and directors of said company had obtained the assent of a majority of the holders in value of the stock of said company authorizing the submission or assenting to the building of the proposed branch railroad through Montgomery county. It is further contended that under the Constitution of Kentucky adopted September 28, 1891, the qualified voters of Montgomery

county had no right or power on the 12th day of October, 1891, under the provisions of said Constitution, to have the question of subscription of stock submitted to them by the county court; that said vote was void, and all of said orders were *ultra vires* and void, and imposed no duty upon appellant to enter upon appellee's county stock book said subscription of stock. It is provided in section 157 of the Constitution that "the tax rate for other than school purposes of counties shall not at any time exceed fifty cents on the one hundred dollars in value of taxable property of such county, unless it should be necessary to enable such county to pay the interest on and provide a sinking fund for the extinction of indebtedness contracted before the adoption of this Constitution, and no county shall be authorized or permitted to become indebted in any manner, or for any purpose, to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election held for that purpose, and any indebtedness contracted in violation of this section shall be void." It is also contended that the proposed subscription was in violation of section 158 of the Constitution. It appears from the petition that the total value of taxable property in Montgomery county for 1890 was $4,956,701, and that the total existing indebtedness of said county was $128,000; hence the subscription proposed was prohibited by sections 157 and 158 of the Constitution. Section 179 of the Constitution provides as follows: 'The General Assembly shall not authorize any county to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association or individual, except for the purpose of constructing bridges, turnpike roads or gravel

roads." Section 1 of the schedule of the Constitution provides "that all laws of the Commonwealth in force at the time of the adoption of this Constitution, not inconsistent herewith, shall remain in full force until altered or repealed by the General Assembly. . . . The provisions of all laws which are inconsistent with this Constitution shall cease upon its adoption."

It is manifest that at the time the vote was taken upon the proposition aforesaid the Legislature could not have authorized any such vote to be taken, or subscription made, to the capital stock of the appellee; hence we conclude that the vote and the proposed subscription was in conflict with the provisions of section 179 of the Constitution, and was therefore null and void. It is evident that the framers of the Constitution intended to prevent further subscriptions by counties in aid of railroads, and, if this be true, it follows that any vote taken after the Constitution went into effect was void, and conferred no right upon the railroad and imposed no obligation upon the appellant to make the subscription sought to be enforced by the aforesaid suit and motion for mandamus. It is evident that appellee did not acquire any vested right or contract by reason of the Legislature authorizing the vote aforesaid to be taken. A question not entirely unlike the case at bar was decided by the supreme court in the case of Aspinwall v. Board, reported in 22 How., 364-380, (16 L. Ed., 296). The opinion of the court was delivered by Justice Nelson. It appeared in that case that the plaintiffs brought suit against the board of commissioners of the county of Daviess to recover two installments of interest accruing upon certain bonds issued by the board for stock subscribed to the Ohio & Mississippi Railroad Company, and on the hearing the following questions arose:

First, whether by the act of incorporation of the said railroad company, and the amendment thereto of July 15, 1849, any right to subscriptions vested in said company, as would exclude the operation of the new Constitution of Indiana, which took effect on the 1st day of November, 1851; second, whether, by virtue of the said acts and the said election, in the declarations set forth, the Ohio & Mississippi Railroad Company acquired any such right to the subscription of the defendants as would be protected by the Constitution of the United States against the new Constitution of Indiana, which took effect the 1st day of November 1851.    The charter of the railroad company, passed February 14, 1848, provided that it should be lawful for the county commissioners of the county through which the road passed to subscribe for stock on behalf of the county at any time within five years after the opening of the books of subscription, if a majority of the qualified voters of said county at an annual election should vote for the same.  The amended act of January 15, 1849, made the holding of the election in the county peremptory, on the 1st day of March next, to determine the question of subscription or not to the stock.    The election was held in pursuance of this law, and a majority of the votes of the county were cast in favor of a subscription on the first Monday in March, 1849.  On the 10th day of September, 1852, the board of commissioners, in pursuance of the acts and election aforesaid, subscribed for 600 shares of the stock of the railroad company, amounting to $30,000, and in payment of said stock issued thirty (30) bonds, of $1,000 each, duly signed, etc., and delivered same to the president of the railroad company. They were made payable at the North River Bank, in the city of New

York, 25 years from date, to the railroad company or bear-er with interest at the rate of six per cent. pay-able annually, on the 1st day of March, at the afore-said bank, upon the presentation and delivery of the prop-er coupons attached. The plaintiffs were the holders of sixty of these coupons. The new Constitution of Indiana provided as follows: "No county shall subscribe stock in any incorporated company, unless the same be paid for at the time of such subscription, nor shall any county loan its credit to any incorporated company, nor borrow money for the purpose of taking stock in any such com-pany." Section 6, art. 10, Const. Ind. The election took place on the first Monday in March, 1849. The Constitu-tion of Indiana was adopted the 1st day of November, 1851, but the subscription was not made until the 10th day of September, 1852, and the bonds were issued there-after. It was insisted that the contract of subscription became complete when, at the election, a majority of the votes were cast in its favor, and did not require the form of a subscription on the books for the stock of the rail-road company to make it obligatory upon the parties, but was complete before the constitutional prohibition of In-diana. The court held that it was unable to concur in this view, stating that a subscription was necessary to create a contract binding on the county on one side to take the stock and pay in the bonds, and upon the other to transfer the stock and receive the bonds for the same; that until the subscription was made the contract was unexecuted, and obligatory upon neither party. The fore-going decision is much stronger in support of the demur-rer than even the provisions of our Constitution. In the case, *supra*, the vote had been taken, and the result an-nounced and certified, long before the prohibitory amend-

ment to the Constitution was adopted, and yet the supreme court held that, notwithstanding that fact, no valid subscription could be made to the stock of said company after the time that the prohibitory amendment to the State Constitution took effect.  After a careful consideration of all of the authorities cited by appellant, we are clearly of opinion that the demurrer to the petition ought to have been sustained.  The judgment appealed from is therefore reversed, and cause remanded, with directions to sustain the demurrer, and for other proceedings consistent herewith.